UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X   Case No.
STANLEY ST. HILLIEN,

        Plaintiff,

  -against-

TRICORBRAUN INC., PACKAGE ALL, LLC and
SEAN CARAVAN,

        Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Stanley St. Hillien ("Plaintiff" or "Hillien") alleges against the Defendants Tricorbraun Inc. ("TricorBraun"), Package All, LLC ("Package All") and the Defendant Sean Caravan ("Caravan") (collectively "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Plaintiff Hillien brings this action against the Defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL") to recover the damages he sustained as the result of being discriminated against, subjected to a hostile work environment, and retaliated against on the basis of his race, color, national origin and familial status.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related NYSHRL claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

4. On or about August 23, 2021, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") against the Defendants, and was assigned a charge number 520-2021-04382.

5. On August 12, 2022, Plaintiff filed an amended charge of discrimination with the EEOC.

6. On December 29, 2022, EEOC issued Plaintiff Notice of Right to Sue (annexed hereto as Exhibit A).

7. Plaintiff has exhausted administrative remedies, and any and all other prerequisites to the filing of this suit have been met.

## THE PARTIES

8. Plaintiff is a Black individual of Haitian national origin, who is protected from unlawful discriminatory practices under Title VII and NYSHRL.

9. Plaintiff is a resident of Nassau County, in the State of New York.

10. TricorBraun is a foreign limited liability company organized and existing under and by virtue of the laws of the State of Missouri.

11. TricorBraun supplies bottles, jars, closures, tubes, other packaging components that the food, wine, personal care, cosmetic, ethical pharmaceutical, biotechnical, general industrial, veterinary and automotive industries need to bring to their products to market.

12. TricorBraun is headquartered at 6 City Place Drive, 1000 St. Louis, MO 63141.

13. TricorBraun is a foreign business corporation authorized to conduct business in the State of New York.

14. The registered agent of TricorBraun in New York is C T Corporation System, located at 28 Liberty Street, New York, New York 10005.

15. At all times herein relevant, TricorBraun was and is an "employer" within the meaning of Title VII and NYSHRL.

16. Package All is a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware.

17. Package All is a stocking distributor to the over-the-counter generic pharmaceutical and nutraceutical industries, providing packaging to several other industries including personal care and beauty, sports and fitness, food and beverage, and household and industrial.

18. Package All is headquartered at 655 Church Street, Bayport, New York 11705.

19. Package All is a foreign business corporation authorized to conduct business in the State of New York.

20. The registered agent of Package All in New York is C T Corporation System, located at 28 Liberty Street, New York, New York 10005.

21. At all times herein relevant, Package All was and is an "employer" within the meaning of Title VII and NYSHRL.

22. TricorBraun and Package All are affiliated companies.

23. On or about January 3, 2018, TricorBraun acquired Package All Corp.

24. Package All is a wholly-owned subsidiary of TricorBraun.

25. Package All and TricorBraun are led by the same executive team.

26. Package All and TricorBraun jointly controlled the terms and conditions of Plaintiff's employment.

27. The Defendant Caravan is a Caucasian individual of Irish national origin.

28. At all times herein relevant, Caravan was and is an agent, servant and/or employee of TricorBraun.

29. At all times herein relevant, Caravan was and is an agent, servant and/or employee of Package All.

30. At all times herein relevant, Caravan was employed at TricoBraun and Package All as the VP of Sales.

31. During the entirety of Plaintiff's employment with TricorBraun and Package All, the Defendant Caravan had the right to hire, fire, promote, demote, reward and sanction Plaintiff.

32. During the entirety of Plaintiff's employment with TricorBraun and Package All, the Defendant Caravan had the right to control the terms and conditions of Plaintiff's employment.

## STATEMENT OF FACTS

33. On December 4, 2017, Plaintiff commenced his employment with TricorBraun.

34. On January 3, 2018, TricorBraun acquired Package All, where Plaintiff continued his employment.

35. Plaintiff worked at 655 Church Street, Bayport, New York 11705.

36. Plaintiff was employed as a New Business Development Associate, Mid-Atlantic Territory.

37. Plaintiff was paid a base salary and commission.

38. Plaintiff was paid $21.63 per hour plus commissions.

39. In or around end of 2019 or early 2019, to avoid paying overtime, the Defendants misclassified Plaintiff as an exempt employee, and started paying him a salary of $1788.09 bi-weekly plus commissions.

40. Plaintiff earned approximately $100,000 per annum.

41. Plaintiff was entitled to various benefits, such as vacation, holidays, sick leave, participation in major medical and other employee benefit plans *e.g.* 401K *etc*.

42. During the entirety of his employment Plaintiff was a stellar employee.

43. By way of example, in 2020, Plaintiff won the President's Club award for being a top performer, which was announced during the annual meeting.

44. Despite his outstanding work performance, Plaintiff became the target of unlawful discriminatory practices on the basis of his race, color, national origin and familial status.

45. From March 2018 to April 4, 2022, on a regular and pervasive basis, Plaintiff has been subjected to an ongoing harassment by his immediate supervisor, the Defendant Caravan.

46. From 2019 to 2021, Plaintiff was the only Black individual working at 655 Church Street, Bayport, New York 11705.

47. The hostile work environment Plaintiff was subjected to was continuing in nature.

48. In March-April 2018, the Defendant Caravan **compared Plaintiff to dark amber PET Packer** by physically pointing out to the fact that **Plaintiff was more of a dark amber shade, as opposed to black PET**, while working on a project in the Sales Hub.

49. Other non-Black, non-Haitian employees witnessed Caravan's comments towards Plaintiff, and started laughing.

50. Caravan's conduct made Plaintiff feel extremely uncomfortable, and he walked away to his cubicle to avoid on the ongoing harassment.

51. In summer 2018, there was a blackout at Package All due to a car accident on the main road.

52. As employees were packing and leaving to another office, the Defendant Caravan said, "**I can see everyone, but Stan!", alluding to the color of Plaintiff's skin**, which was witnessed by other non-Black, non-Haitian employees.

53. Plaintiff again felt humiliated and embarrassed due to Caravan's discriminatory comments.

54. The instances of discrimination were permitted by the Defendants to continue unremedied for a long time, and amounted a discriminatory policy and practice.

55. Plaintiff was not the only one who was subjected to discrimination by the Defendant Caravan.

56. By way of example, in or around 2018, during the Trade Show, the Defendant Caravan referred to another African American sales representative as "**Nigger**", which was witnessed by other non-African American employees.

57. By way of another example, the Defendant Caravan made a comment with regard to a Hispanic customer, threatening to report him to ICE, in the email chain that included David, Ryan and Will.

58. David, who is a Hispanic employee based in Florida, and other TricorBraun/Package All employees found this comment to be highly inappropriate.

59. The Defendants provided no reasonable avenues for employees to report discrimination, and so the harassment continued.

60. In 2019, when the Defendants were working on adding photos of the sales team to Microsoft Teams, the Defendant Caravan commented that Plaintiff should not add a photo of himself, implying **such photo would not appeal to his White customers**, and thus would hurt the sales.

61. Caravan's unlawful comments again made Plaintiff feel extremely uncomfortable.

62. During a substantial portion of Plaintiff's employment, there was no HR, and the first training Plaintiff received about discrimination was well after the numerous incidents of discrimination took place.

63. In fear of retaliation, Plaintiff was reluctant to complain directly to the Defendant Caravan, his immediate supervisor, and the Defendants failed to otherwise exercise reasonable care to prevent his harassing behavior.

64. In November-December 2019, after watching a documentary about Honorable Justice Clarence Thomas, in which his Honor recounts his extraordinary life story – from living in poverty as a child to serving the U.S. Supreme Court, the Defendant Caravan compared Plaintiff to his Honor.

65. There are no similarities between Plaintiff and the Honorable Justice Clarence Thomas, other than they are both Black.

66. In January 2020, Plaintiff was discussing fishing with two of his coworkers, Mike and Leni.

67. The Defendant Caravan overheard the conversation. He called Plaintiff towards his desk. He put whiteout on Plaintiff's hand and said, "**You are trying to be White!**"

68. Plaintiff felt intimidated and embarrassed by the comment, and walked away to avoid the ongoing harassment, that the Defendants repeatedly had failed to prevent.

69. The Defendants' violations of Title VII, NYSHRL were continuing in nature.

70. As the result, Plaintiff has experienced a continuous practice and policy of discrimination.

71. The consistent pattern of discriminatory comments, that Caravan subjected Plaintiff to, constitutes a continuing violation.

72. The above-referenced unlawful practices were composed of a series of discriminatory acts that collectively constitute a series of unlawful employment practices.

73. In February-March 2020, Plaintiff received a 2% commission on two sales, rather than his typical 1% commission.

74. The increased commission has been promised to Plaintiff as an incentive to do more sales at the onset of his employment.

75. When this was "discovered" by the accounting department, however, Plaintiff was wrongfully accused of being a thief for failing to report this alleged "error".

76. During the meeting with the Defendant Caravan and Sarah Herbert regarding the issue, the Defendant Caravan compared Plaintiff to an employee who would take paper towels only because there was an access of office supplies at the jobsite, while treating Caucasian employees with respect.

77. Plaintiff was labeled as a thief due to the fact that he is Black.

78. Other non-Black non-Haitian employees never had an issue with calculating their commissions by the accounting department.

79. In August 2021, in view that the Defendants repeatedly failed to provide resources for Plaintiff to report discrimination, Plaintiff used the annual management survey as an opportunity to report his concerns of discrimination.

80. Only one week after Plaintiff complained about discrimination through survey, the Defendants placed Plaintiff on a Performance Improvement Plan (PIP) in retaliation against him for complaining about discrimination.

81. The retaliatory PIP was based on false accusations and was pre-textual in nature.

82. By way of example, Plaintiff was criticized for a space constraint issue with respect to one of the accounts, even though it was up to the management, not Plaintiff, whether to charge the freight charge for a "D/S".

83. Other non-Black employees, who ran into issues with the same account, were not reprimanded.

84. By way of another example, Plaintiff was criticized for customer cancelling an order, which was a common practice, especially during the pandemic, while other sales representatives were not written up for the same.

85. By way of another example, Plaintiff was criticized with regard to the orders kept past their release dates.

86. Plaintiff strongly disagreed with the retaliatory PIP he received from the Defendants, and submitted a detailed rebuttal to the same.

87. In his response, Plaintiff questioned whether the Defendants wrote up other sales representatives (non-Black), who also had orders past their release dates.

88. HR failed to provide a response to Plaintiff's request.

89. On August 30, 2021, Plaintiff continued to complain about discrimination to no avail.

90. In further retaliation against Plaintiff, the Defendants placed Plaintiff on the "extended 30 days" PIP. Plaintiff was to be "continued to [be] monitored", even though the PIP Follow UP form indicated that Plaintiff "met [his] forecast numbers" and has shown "improvement".

91. In further retaliation against Plaintiff, in or around September 2021, the Defendants requested Plaintiff to work from the office, which made it burdensome for Plaintiff to drop off his son, who has special needs, at a day care, since early drop off was no longer available due to Covid-19.

92. While requiring Plaintiff to work from the office because he complained about discrimination, many other non-Black, non-Haitian employees *e.g.* Michelle, Jodi, Rene, Michael, David, Will, Todd, Bryan, Laraine, Julie, Jennifer, Sarah were allowed to work from home.

93. Despite being discriminated and retaliated against, Plaintiff's work performance continued to be outstanding.

94. In October 2021, one of the customers said, "Stanley was a pleasure to deal with and is going a great job"

95. On December 20, 2021, another customer said, "Can we go to back to Stanley as our sales Rep"

96. The Defendants ignored Plaintiff's repeated complaints about discrimination, and took no immediate corrective action whatsoever to prevent the ongoing harassment.

97. Although Plaintiff was told that some sort of 'investigation' was conducted, and his concerns have been in fact substantiated, the Defendant Caravan continued making derogatory comments towards Plaintiff on a regular and pervasive basis.

98. In September 2021, Plaintiff took some time off from work to bring his mother to her home country in Haiti.

99. The Defendant Caravan said, "**At least two Haitians are going back!**"

100. This was in reference to the Haitian immigrant crisis that was occurring during this time period as a result of the natural disasters and political instability in Haiti at that time.

101. On a regular and pervasive basis, the Defendant Caravan made fun of and mocked Plaintiff's hair, calling it "**nappy African hair**".

102. Plaintiff made numerous demands for these derogatory comments to stop to no avail.

103. The Defendant Caravan never made fun of other non-Black non-Haitin employees' hair, and singled out because of Plaintiff's hair texture, which is historically associated with Plaintiff's race.

104. In or around March 2022, the Defendant Caravan continued making fun of Plaintiff's hair, and even suggested he should cut it.

105. In retaliation against Plaintiff for complaining about discrimination, the Defendant Caravan started stripping Plaintiff off his accounts by pressuring him to give them away to Josh Caravan, the Defendant Caravan's son.

106. Pursuant to the Defendants' policy, "employee does not earn any commission on the account after the customer has been removed from the employees".

107. By stripping Plaintiff off his accounts and depriving him of commissions, the Defendants took an adverse employment action against Plaintiff because of discrimination and retaliation against him on the basis of his race, color and national origin.

108. In further retaliation against Plaintiff for speaking up about discrimination, the Defendant Caravan referred only less desirable prospects to Plaintiff, while referring the more lucrative prospects to other, non-Black non-Haitian employees.

109. By referring less desirable prospects to Plaintiff, and referring the more lucrative prospects to other, non-Black non-Haitian employees, the Defendants took an adverse employment action against Plaintiff because of discrimination and retaliation against him on the basis of his race, color and national origin.

110. In further retaliation against Plaintiff, the Defendants refused to provide Plaintiff a reasonable accommodation related to his familial status, while providing a similar accommodation to non-Black non-Haitian employees *e.g.* Renee, Will.

111. In that regard, Plaintiff requested a temporary reasonable accommodation to work from 9.30a.m. to 6.30p.m. (instead of 8.30a.m. to 5p.m.), so that he could drop off his minor son with special needs to a day care.

112. While the Defendants agreed to accommodate Plaintiff for as little as two weeks, no further accommodation was provided to Plaintiff, even though the Defendants would not sustain an undue hardship had they provided such accommodation.

113. While Plaintiff has been struggling to find child care for his child who has special needs, Plaintiff continued to perform his duties diligently.

114. To do that, Plaintiff cut his lunch break, stayed late, worked at home after work, prepared emails and spoke with customers on the weekends.

115. The Defendants ignored Plaintiff's attempts to diligently perform his duties, and kept pressuring him to come to the office at 8.30a.m., while accommodating other non-Black, non-Haitian employees, and allowing many employees, referenced above, to work from home.

116. On April 4, 2022, Plaintiff was no longer able to tolerate discrimination and retaliation he was subjected to, and had no choice, but to submit his involuntary resignation.

117. In further retaliation against Plaintiff, the Defendants failed to pay the commissions for the sales Plaintiff had completed prior to his forced resignation.

118. By way of example, the Defendants failed to compensate Plaintiff for the projects on pipe lines he worked on prior to his constructive termination.

119. On April 27, 2022, though counsel, Plaintiff notified the Defendants about his intention to commence legal action to remedy the discriminatory conduct he was subjected to during his employment.

120. On June 24, 2022, in further retaliation against Plaintiff, he received a letter from Chuck Cope, the Human Resources Manager, who had previously denied Plaintiff's request for a reasonable accommodation.

121. In the letter, Mr. Cope advised Plaintiff, among other things, that Package All will take "whatever steps necessary" to ensure his obligations are followed under the Confidentiality and non-Competition Agreement, Plaintiff purportedly signed on January 26, 2018.

122. On August 1, 2022, the Defendants, through counsel, informed Plaintiff that they were considering taking legal action against Plaintiff for the alleged violation of said agreement.

123. Previously, prior to Plaintiff's constructive termination, he had made numerous requests from the Defendants for a copy of said agreement, but his requests fell on deaf ears.

124. The Defendants expressed their intention to enforce the agreement only after Plaintiff, through counsel, submitted his intent-to-sue letter to the Defendants.

125. The Defendants decided to enforce the non-compete agreement, he allegedly entered with Package All Corp., in retaliation against Plaintiff for his complaints about discrimination.

126. There was no other legitimate reason to enforce such agreement, other than retaliation, and the agreement on its face is not reasonably limited in scope and duration.

127. In further retaliation against Plaintiff, the Defendants disputed Plaintiff's request for unemployment insurance benefits.

128. On May 15, 2019, after Plaintiff explained the circumstances of his forced resignation, the New York State Department of Labor approved Plaintiff's request for unemployment insurance benefits.

129. In further retaliation against Plaintiff, the Defendants interfered with Plaintiff's subsequent employment.

130. In that regard, in or around May 2022, in an effort to mitigate his lost wages, Plaintiff commenced his employment with Silver Spur Corporation.

131. The Defendants reached out to Plaintiff's subsequent employer, and demanded Plaintiff's immediate termination, with a threat to sue or cease their business relationship.

132. On August 15, 2022, as the result of such demand by the Defendants, Plaintiff was terminated from Silver Spur Corporation.

133. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

134. As the result of the Defendants' unlawful discriminatory practices, Plaintiff suffered and continues to suffer severe emotional distress.

135. As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

### FIRST CAUSE OF ACTION
### Discrimination in Violation of Title VII

136. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

137. Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color.

149. Pursuant to 42 USCS § 2000e (m), an unlawful employment practice is established when the complaining party demonstrates that race, color was a motivating factor for any employment practice, even though other factors also motivated the practice.

150. The corporate Defendants unlawfully discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his race, color, and unlawfully terminated his employment.

151. As the direct and proximate result of these corporate Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII

152. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

153. Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his terms, conditions, or privileges of employment because of such individual's race, color.

154. The corporate Defendants unlawfully discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his race, color, and unlawfully terminated his employment.

155. As the direct and proximate result of these corporate Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII

156. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

153. Pursuant to 42 USCS § 2000e-3, it shall be an unlawful employment practice for an employer to discriminate against any of his employees, or to discriminate against any individual because he has opposed any practice made an unlawful employment practice.

154. The corporate Defendants unlawfully retaliated against Plaintiff for opposing the Defendants' discriminatory practices by terminating his employment, disputing Plaintiff's request for Unemployment Insurance benefits, refusing to provide a reasonable accommodation due to Plaintiff's familial status, interfering with Plaintiff's subsequent employment, stripping Plaintiff off his accounts, and refusing to compensate Plaintiff for the commissions he earned prior to his constructive termination.

155. As the direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
### Discrimination in Violation of NYSHRL

156. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

157. The NYSHRL §296 (1) provides that it shall be an unlawful discriminatory practice for an employer because of an individual's race, color to discharge from employment such individual,

or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

159. Pursuant to 296(6), it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under NYSHRL, or to attempt to do so.

160. The Defendants unlawfully discriminated against Plaintiff on the basis of his race, color.

161. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### Hostile Work Environment in violation of NYSHRL

162. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

163. Pursuant to NYSHRL § 296 (1) (h) it shall be an unlawful discriminatory practice for an employer to subject any individual to harassment because of an individual's race, or because the individual has opposed any practices forbidden under NYSHRL or because the individual has filed a complaint, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer shall not be determinative of whether such employer shall be liable.

164. Plaintiff's situation at his job was intolerable as a result of the discrimination by the Defendants to which he was subjected, that no reasonable person in Plaintiff's position could be expected to continue working under these conditions.

165. The Defendants unlawfully created a hostile work environment for Plaintiff and subjected him to inferior terms, conditions and privileges of his employment because of his race.

166. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of NYSHRL

167. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

168. The NYSHRL §296 (7) provides that it shall be unlawful discriminatory practice for any person to retaliate or discriminate against any person because he has opposed any practices forbidden by Human Rights Law.

169. The Defendants engaged in an unlawful discriminatory practice by terminating his employment, disputing Plaintiff's request for Unemployment Insurance benefits, refusing to provide a reasonable accommodation due to Plaintiff's familial status, interfering with Plaintiff's subsequent employment, stripping Plaintiff off his accounts, and refusing to compensate Plaintiff for the commissions he earned prior to his constructive termination.

170. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

b. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. Declaring that the Defendants engaged in unlawful employment practices prohibited by the Title VII, and awarding Plaintiff a recovery for damages sustained;

d. Declaring that the Defendants engaged in unlawful employment practices prohibited by the NYSHRL, and awarding Plaintiff a recovery for damages sustained;

e.  Declaring that the Defendants discriminated against and retaliated against and terminated Plaintiff on the basis of his race, color, national origin and familial status and awarding Plaintiff a recovery for damages sustained;

f.  Awarding damages to Plaintiff, retroactive to the date of her termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

g.  Awarding Plaintiff compensatory damages for his mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

h.  An award of prejudgment and post-judgment interest;

i.  An award of punitive damages where applicable;

j.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

k.  Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the FRCP, Plaintiff demands a trial by jury.

Dated: January 10, 2023
    New York, New York

                                Respectfully submitted,

                                Akin Law Group PLLC

                                */s/ Olena Tatura*

                                _____
                                Olena Tatura, Esq.
                                45 Broadway, Suite 1420 New York, NY 10006 (212) 825-1400
                                olena@akinlaws.com
                                *Counsel for Plaintiff*